## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hotel Equity Fund V, LLC, | Case No. 10-10951 (BLS) |
| Alleged Debtor. | Re: Docket No. 35<br>Obj. Deadline: TBD<br>Hearing Date: April 13, 2010 @ 12:30 p.m. (status conference only at the discretion of the Bankruptcy Court) |

## JOINT MOTION OF THE SOVEREIGN GOVERNMENT OF NEVIS, A/K/A THE NEVIS ISLAND ADMINISTRATION, AND THE FOUR SEASONS RESORT ESTATES HOMEOWNERS ASSOCIATION LTD. REQUESTING THAT THE BANKRUPTCY COURT ABSTAIN FROM HEARING THIS BANKRUPTCY PROCEEDING

The sovereign government of Nevis, a/k/a the Nevis Island Administration, acting through the government of Premier Joseph Parry (the "Government of Nevis"),[1] and the Four Seasons Resort Estates Homeowners Association Limited (the "Association"),[2] by their undersigned counsel, submit this joint motion requesting that this Court abstain from hearing this bankruptcy proceeding (the "Motion to Abstain"). In support of this Motion to Abstain, the Government of Nevis and the Association respectfully state as follows:[3]

---

[1] The Government of Nevis submits this motion without waiving or intending to waive its sovereign immunity, either explicitly or implicitly. Instead, the Government of Nevis submits this filing solely to request that this Court abstain from hearing this bankruptcy proceeding out of concern for international comity.

[2] The Association submits this motion on behalf of itself and its constituent members (the "Homeowners").

[3] While the Government of Nevis and the Association join in support of Wells Fargo's Motion to Dismiss [D.I. No. 35], for the reasons discussed herein, the Government of Nevis and the Association are concerned that final resolution of this motion may require too much time in light of the current exigencies. However, to the degree that the involuntary petition could be dismissed promptly to allow foreclosure to occur, both the Government of Nevis and the Association fully support such a decision.

## INTRODUCTION

1. The island nation of Nevis is currently facing a national emergency: the Four Seasons Nevis (the "<u>Resort</u>"), prior to its closure in October 2008, was Nevis' largest employer since the Resort opened in 1991. The Resort directly employed approximately 20% of the nation's workforce, and accounted collectively, with those whose employment indirectly depended upon the Resort, for 35-40% of the total workforce.

2. All told, the Resort prior to its closure accounted for nearly 40% of the GNP of Nevis. Additionally, the Government of Nevis and the economy of Nevis are directly dependent on tourists and visitors to the Resort (through import duties, etc.) in order to support Nevis.

3. However, at this time, there appears to be a high-stakes game of "chicken" which is being played not only with the future of the Resort, but the future of Nevis itself. Despite the fact that reconstruction work must be finished in time for the Resort to reopen for November 1, 2010 in order to save the Winter 2010/2011 Season, reconstruction work has had to stop while an inter-creditor dispute is being teed up for resolution here in Delaware.

4. However, there is simply not enough time to allow reconstruction to stop: unless work can continue **before May 1, 2010** – less than 3 weeks from now – the Association and the Government of Nevis have been advised that the Resort will not make the reopening.

5. Additionally, while delays in reopening the Resort continue, the Government of Nevis and the Association are becoming more and more concerned that

insurance proceeds related to business interruption are being jeopardized. In short, the only thing which can truly save the Resort is to have no further delays in reopening it.

6. The Government of Nevis and the Association, therefore, believe that foreclosure must be permitted to go forward immediately because Wells Fargo, as special servicer, and Calyon – are the only parties that can now finalize the rebuilding of the Resort and have it reopened in time for the holiday season. Therefore, the Government of Nevis and the Association respectfully request that the Court abstain from the bankruptcy proceeding and allow the foreclosure that was scheduled in Nevis to go forward immediately.

## BACKGROUND TO REQUEST FOR ABSTENTION

7. While the facts related to the Resort are most likely becoming more and more familiar to the Court, a short statement of background may provide some additional context as to why abstention is appropriate.

8. The Resort was initially built in the late 1980s by a French development group, but was later sold to a St. Louis, Missouri-based hotelier, Maritz Wolff & Co. ("Maritz Wolff"). Ownership of the Resort was through a Delaware single purpose entity, the alleged debtor Hotel Equity Fund V, LLC ("HEF"). The Four Seasons Hotels and Resorts, B.V. (the "Four Seasons") is the manager and operator of the Resort, subject to the terms of an agreement between the Four Seasons and HEF.

9. The Resort's hotel was severely damaged by Hurricane Omar in October 2008, and the Resort has remained closed since then. The slow rebuilding effort

has been the result of a number of factors including mismanagement by the Resort's owners, HEF.[4]

10. Pre-Hurricane Omar, the Resort was refinanced in 2005 by Maritz Wolff so that a $126 million loan was taken out secured only by the Resort. After the loan was taken out, approximately $80 million of the proceeds of the loan were used to pay off the previous lender of the resort, and the balance – over $45 million – is believed to have been distributed out to HEF's owners and their partners. The result was a Resort owner that was tremendously undercapitalized.

11. After Hurricane Omar, the Resort owners – who had underinsured the Resort and already defaulted on the loans – walked away from the Resort. A foreclosure on the resort was scheduled in Nevis by the special servicer of the $126 million loan, Wachovia, last summer almost a year ago. The loan is a complex commercial backed security which is held by, among others, an entity known as Whale 8, Calyon (*i.e.*, Credit Agricole), and Capstead. Of the various holders of the interest in the loan, only Whale 8 and Calyon are "in the money."

12. The first foreclosure scheduled for last summer was aborted due to an internal dispute which was later resolved, and a second foreclosure was scheduled for March 25, 2010 in Nevis. The foreclosure would have put Wachovia (now Wells Fargo) and Calyon firmly in the driving seat.

---

[4] It bears noting that after a previous hurricane did significantly more damage to the Resort, the Resort was reopened in less than a year's time. The primary reason for the delay in finishing work in rebuilding the Resort appears to be the infighting among the various creditors.

13. On March 19, 2010 one week before the second scheduled foreclosure, Capstead again managed to block the sale, by filing an involuntary bankruptcy petition in the Delaware bankruptcy court against the owner of the Resort, Hotel Equity Fund V, LLC. Now, because of the automatic stay, Wells Fargo cannot foreclose on the Resort. In light of the fact that Wells Fargo cannot foreclose on the Resort, Wells Fargo is now halting all reconstruction efforts, until this Court determines that it can proceed.

## LEGAL ANALYSIS

### A. Permissive Abstention

14. This Court is well familiar with the standards for abstention. *See In re: SemCrude, L.P.*, Case No. 08-11525 (BLS), slip op. at 39-45 (Bankr. D. Del. Apr. 9, 2010) (attached hereto as Exhibit A). Specifically, 28 *U.S.C.* § 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11

15. In deciding whether to abstain, courts "flexibly apply" a number of factors, including:

> (1) the effect or lack thereof on the efficient administration of the case; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

> (9) the burden of the bankruptcy court's docket; (10) the likelihood of the commencement of the proceedings in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*In re Holiday RV Superstores, Inc.*, 362 B.R. 126 (Bankr. D. Del. 2007) (citing *In re Mobile Tool Int'l*, 320 B.R. 552, 556 (Bankr. D. Del.2005)). *See also In re SemCrude*, slip op. at 41 (listing twelve factors relevant to permissive abstention).

16. The above list is not exhaustive. Federal courts have held that 1334(c)(1) incorporates non-bankruptcy federal abstention doctrines, including comity. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F. 2d 824, 833 (5th Cir. 1993). Comity "is the recognition which one nation allows within its territory the legislative, executive or judicial *acts* of another nation." *Cliffs-Nedrill Turnkey Int'l-Oranjestad v. M/T Rich Duke*, 734 F.Supp. 142 (D. Del. 1990).

17. The Delaware Bankruptcy Court has already recognized that a policy of preserving international comity may favor abstention in certain circumstances. *See In re AstroPower Liquidating*, 335 B.R. 309, 332 (Bankr. D. Del. 2005). This is appropriate because it would "not follow that Congress would expressly allow the federal district courts to defer by abstention to state courts 'in the interest of justice,' but would at the same time implicitly divest them of their inherent power to abstain when the interest of justice would be served by a case being heard in a foreign tribunal where the action arose." *Baumgart v. Fairchild Aircraft Corp.*, 981 F. 2d 824, 833 (5th Cir. 1993).

18. Here, a respect for international comity weighs heavily in favor of permissive abstention by the bankruptcy court. The bankruptcy which is currently pending before this Court was an involuntary action filed against a single purpose limited

liability company that was created solely for the purpose of holding real property which is exclusively located in Nevis.

19. While this Court no doubt has jurisdiction over the bankruptcy of a Delaware limited liability company, the fact is that the Nevis courts have been effectively addressing the issues related to the creditors' rights to reassert control over the Resort after HEF abandoned the property and defaulted on the $126 million loan. The Eastern Caribbean Supreme Court in the High Court of Justice, Federation of Saint Christopher and Nevis, Nevis Circuit, issued an Amended Articles of Sale as of July 30, 2009 (attached as Exhibit B). Pursuant to this Amended Articles of Sale, Wachovia was permitted to foreclose on the Resort.

20. In light of the fact that the Nevis courts already have determined who has the rights to the property in question, property which may be the primary asset of this bankruptcy estate, permitting Capstead and others to stall the foreclosure and transfer of title forces this Court into the uncomfortable position of potentially trampling on the jurisdiction of the Nevis courts.

21. In addressing a similar attempt to derail a foreclosure in the Caribbean through the filing of bankruptcy in a U.S. bankruptcy court, the court in *In re Spanish Cay Co.*, 161 B.R. 715, 725 (Bankr. S.D. Fl. 1993), determined that it would abstain in favor of a Bahamian liquidation, holding: "[I]t is a basic tenet of international law that real property should be governed by the laws of the country in which the property is located." (*citing El Cid, Ltd. v. New Jersey Zinc Co.*, 575 F. Supp. 1513 (S.D.N.Y.1983) ("it is well settled that where rights to real property are in issue, the law

of the situs of the property controls.")).[5] Here, the mortgages that are being foreclosed on are recorded in Nevis, and relate exclusively to property in Nevis.

22. The other factors weigh heavily in support of abstention: not only was there a pending matter going forward in Nevis, but the matter has an incredibly large impact on the well-being of the citizens of Nevis and the nation as a whole. Furthermore, the alleged debtor, HEF, had already abandoned the property and the special servicer was primarily in control of the Resort and its rebuilding efforts for well over a year.

23. Furthermore, the courts in Nevis provide more than adequate safeguard. As a member of the British Commonwealth and a former British Colony, the courts in St. Kitts and Nevis are guided by English common law with appeals to the Privy Counsel in London.

---

[5] Despite the fact that the court's analysis was under 305(a) of the bankruptcy code, the facts in *Spanish Cay* are surprisingly similar to the current scenario. The Court concluded:

> While it is obvious that the principals of the Debtor would prefer to restructure under United States bankruptcy law, the money put at risk by the investors in this project was put at risk under Bahamian law and not United States law. Therefore, from the standpoint of the investors and from the standpoint of CIBC, both the risks and benefits in the various transactions were governed by the rights and remedies that each party would have under Bahamian law, whether or not those rights are more restricted than the rights under United States law. The Debtor cites no authority in which a Chapter 11 was used to restructure interests in real property located in a foreign jurisdiction with a foreign debtor and foreign law controlling the rights of the parties. This Court finds it impermissible to use Chapter 11 to accomplish this result.

161 B.R. at 726. Alternatively, this Court could determine that abstention pursuant to 11 U.S.C. § 305 is appropriate in this context as was determined by the court in *Spanish Cay*.

24. Furthermore, the docket for the bankruptcy court here in Delaware is already heavily burdened. While the courts in Delaware are known for their abilities to decide complex commercial issues both quickly and competently, the courts in Nevis have an interest in quickly resolving an issue which has a huge impact on the welfare of their own nation.

25. In light of the concerns mentioned, the scales tip heavily in favor of permissively abstaining from this bankruptcy proceeding.

**B.     The Foreign Affairs Doctrine**

26. Nevis is facing a national emergency: based on the legal posturing that is taking place, Nevis must now wait for a determination whether or not 20 to 45 percent of the nation's workforce will be able to return to their jobs. This is simply because the Resort's owner – a Delaware shell entity who has already walked away from the Resort – has been put into bankruptcy by a disgruntled second lien creditor.

27. In light of the concerns being faced by the nation, and the implications that could face the Eastern Caribbean region, the Government of Nevis has already approached the U.S. Embassy for the Eastern Caribbean to ask for the intervention of the U.S. State Department in having this court abstain. On Friday, April 9, 2010, Premier Joseph Parry initiated discussions with the chief U.S. diplomat for the region, Dr. D. Brent Hardt, Chargé d'Affaires for the U.S. Embassy for the Eastern Caribbean, describing the situation in Nevis as a "national emergency," which could have wider implications for the entire Eastern Caribbean region. The bottom-line of the discussions was that the Premier believed that it was critical for this Court to abstain from what is a Nevis issue.

28. The presence of foreign affairs issues can create a political question that prevents justiciability. Courts in this circuit have noted that "when a question relates to foreign affairs, courts will be more hesitant to consider certain questions on the merits than when internal operations are involved." *In re Nazi Era Cases Against German Defendants Litigation*, 129 F.Supp. 2d 370, 374-375 (D.N.J. 2001) (citing *Atlee v. Laird*, 347 F.Supp. 689, 696 (E.D.Pa.1972)). "A court declines to exercise jurisdiction over a case that may hinder or embarrass the executive in the conduct of foreign affairs in deference to the proper distribution of functions between the judicial and the political branches in the area of international relations." *Williams v. Curtiss-Wright Corp.*, 694 F.2d 300, 303 (3d. Cir. 1982).

29. In light of the executive branch's primary interest in representing the foreign policy interest of the United States, and the implications that a ruling might have on the future of nation of Nevis, this Court should refrain from ruling. While Delaware courts do have an interest in adjudicating issues related to Delaware entities, here, very little in the way of Delaware corporate law is implicated with respect to the foreclosure on the Resort. Rather, issues related to the future and livelihood of the people of Nevis are really what are implicated with this last ditch effort by Capstead to stall foreclosure.[6] In light of the political sensitivities involved, this is why the Government of Nevis has specifically sought diplomatic assistance to have the Court abstain and allow the Nevis courts to foreclose.

---

[6] To place some of this into context, just last week, the court held a hearing to determine whether the Four Seasons could continue to pay workers and critical vendors engaged in reconstruction of the Resort. The Premier of Nevis was personally on the telephone prepared to give testimony regarding the hardship that the people of his nation would face if the Four Seasons were not permitted to pay workers.

## CONCLUSION

30. May 1, 2010 represents a critical date for title to the Resort to be firmly in the hands of Wells Fargo and Calyon. Regardless of the Court's decision with respect to abstention, dismissal, or lifting of the stay, work must be permitted to continue so as to make sure that the Resort reopens and the tourist season is saved. Failure to reopen for yet another season – the third season in a row – will be devastating for this island nation.

**WHEREFORE,** the Government of Nevis and the Association respectfully requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

Dated: April 12, 2010
      Wilmington, Delaware

**ELLIOTT GREENLEAF**

/s/ T.A. Kittila
_____
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Theodore A. Kittila (DE Bar No. 3963)
1105 Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
      sak@elliottgreenleaf.com
      tak@elliottgreenleaf.com

*Counsel for the Sovereign Government of Nevis, a/k/a the Nevis Island Administration, and the Four Seasons Resort Estates Homeowners Association Limited*