# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Hotel Equity Fund, V, LLC,<br><br>                  Alleged Debtor. | Chapter 11<br><br>Case No. 10-10951 (BLS)<br><br>**Re: Docket No. 59** |

**RESPONSE OF HOTEL EQUITY FUND V, LLC TO JOINT MOTION OF SOVEREIGN GOVERNMENT OF NEVIS, A/K/A THE NEVIS ISLAND ADMINISTRATION, AND THE FOUR SEASONS RESORT ESTATES HOMEOWNERS ASSOCIATION LTD. REQUESTING THAT THE BANKRUPTCY COURT ABSTAIN FROM HEARING THIS BANKRUPTCY PROCEEDING**

Hotel Equity Fund V, LLC ("HEF"), the putative debtor in this case, by its attorneys, submits this Response to the Joint Motion of Sovereign Government of Nevis, a/k/a The Nevis Island Administration, and the Four Seasons Resort Estates Homeowners Association Ltd. Requesting that the Bankruptcy Court Abstain from Hearing this Bankruptcy Proceeding (the "Abstention Motion"), and states:

      1.      HEF owns the Four Seasons Resort in Nevis (the "Resort").

      2.      In December, 2008, a foreclosure-like proceeding was commenced against HEF in Nevis.

      3.      On March 19, 2010, that proceeding was stayed when three petitioners filed an involuntary Chapter 11 bankruptcy petition against HEF in this Court.

      4.      On April 1, 2010, Wells Fargo Bank, National Association, as Successor by Merger to Wachovia Bank, National Association, N.A., as Successor by Merger to LaSalle Bank National Association, as Trustee for the Benefit of the Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2007-WHALE 8, filed

1841463

an Emergency Motion for an Order (A) Dismissing the Bankruptcy Case and (B) Sanctioning Capstead Mortgage Corp. and Redtail Capital Partners One, LLC Pursuant to 11 U.S.C. § 303(i)(the "Motion to Dismiss").

5. On April 12, 2010, the HOA and the Government of Nevis filed the Abstention Motion.

6. On April 20, 2010, HEF filed a Response to the Motion to Dismiss.

7. In its Response to the Motion to Dismiss, HEF provided a relevant history of the Resort, the loan and interactions of the various parties, which it incorporates herein. As is apparent from that pleading, the HOA (which just represents owners of 67 villas, not all of whom agree with the HOA's actions) has been disparaging HEF and the asset manager of the Resort to extract some payment for its constituents' loss of revenue as a result of Hurricane Omar or for some other unknown reason. In a continuation of that role, the HOA has joined forces with the Government of Nevis (or at least provided the services of its counsel) to continue to misrepresent the facts in numerous ways.

8. First, HEF did not mismanage the Resort for the simple reason that HEF has not managed the Resort. Four Seasons has had control of the Resort's operations at all relevant times since the Resort first opened. If the Resort has been mismanaged – as the HOA alleges – then Four Seasons is to blame.

9. Second, the Resort was not "tremendously undercapitalized" since its loan was renewed, enlarged and extended in September, 2005. The Resort operated for three full years after that date and made each and every monthly payment on its mortgage debt up until Hurricane Omar struck in October, 2008. The Resort won numerous awards during that time. Tellingly, no villa owner or any Nevis government official made any mention much less

- 2 -
1841463

assertion of this "undercapitalization" charge to HEF until after the Resort was damaged by Hurricane Omar.

10. Third, the Resort was not underinsured. The insurance levels were approved by the lender group and Four Seasons. The villa owners never requested insurance coverage from HEF, were never invoiced for insurance from HEF, and never previously complained to HEF (not after Hurricane Georges or Lenny) for lack of coverage. Nor has any villa owner ever previously asked HEF for proof of insurance or to be named as an additional insured. The villa owners are solely to blame for failing to insure themselves from loss of rental revenue caused by Hurricane Omar.

11. Fourth, the primary reason for the delay in rebuilding the Resort was not infighting among creditors, but rather myriad factors including the challenges of reconstructing a resort in the Caribbean after substantial water damage.

12. Fifth, HEF did not abandon the Resort. After it became apparent that HEF would be unable to successfully renegotiate its loan with the lender group, it allowed Wachovia, at Wachovia's request and insistence, to take over reconstruction efforts.[1]

13. The legal analysis in the Abstention Motion is as flawed as its factual recitation.

14. The primary argument made in the Abstention Motion is that the Court should exercise permissive abstention under 28 U.S.C. § 1334(c)(1). However, Section 1334(c)(1), by it terms only applies to <u>proceedings</u>, not to <u>cases</u>. Consequently, that section does not apply to whether the Court should abstain from hearing this bankruptcy case. See <u>Zach v. U.S.</u>, 224 B.R. 601, 605-06 (E.D. Mich. 1998)("Sections 304 and 305 apply when the bankruptcy court is deciding whether or not to dismiss an entire bankruptcy case, not where, as here, the court is

---

[1] The above is not an exhaustive list of the factual inaccuracies in the Abstention Motion. Other factual errors include that (1) Maritz Wolff bought the Resort, (2) HEF's owners received $45 million from the refinancing, (3) only Whale 8 and Calyon are "in the money", and (4) HEF was a shell entity.

- 3 -

deciding whether or not to abstain from an adversary proceeding . . . Title 28, Section 1334(c) of the United States Code instead provides the correct statutory standard which bankruptcy courts must employ when evaluating a motion to abstain in the context of adversary proceedings."); In re Weldon F. Stump & Co., 373 B.R. 823, 826, n.1 (Bankr. N.D. Ohio 2007) ("Section 305's remedy is extremely broad; the court may either dismiss the case or, in the alternative, suspend all proceedings within the case. Under § 1334(c)(1), the court is limited to abstaining from a particular proceeding."). Indeed, in the In re Semcrude, L.P. opinion attached to and relied upon in the Abstention Motion, this Court considered whether to abstain under Section 1334(c)(1) from hearing an adversary proceeding, not the entire bankruptcy case.

15. Although almost mentioned as an afterthought in the Abstention Motion, the Court must determine whether to abstain by reference to 11 U.S.C. § 305(a)(1).[2] Under that section, the Court may dismiss or suspend all proceedings in this case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." In other words, the Court must decide whether HEF and its creditors are better off if the Court allows Wachovia to finalize its foreclosure of the Resort. The simple fact that the foreclosure proceeding exists is not grounds to invoke abstention. See In re Rimsat, 98 F.3d 956, 962 (7th Cir. 1996)("The Nevis receivership has also not been shown to be a sufficiently close substitute for the U.S. bankruptcy proceeding to warrant abstention" under Section 305(a)(2)).

16. The reliance by the Abstention Motion on the opinion in In re Spanish Cay Co., Ltd., 161 B.R. 715 (Bankr. S.D.Fla. 1993) is as misplaced as its reliance on Section 1334(c)(1). In that case, the court had previously modified the stay to allow the secured creditor to institute liquidation proceedings in the Bahamas over the debtor, which owned an island there, and the court then abstained from hearing the involuntary case filed against the debtor under 11 U.S.C. §

---

[2] Section 305(a)(2) does not apply because there is no pending foreign proceeding against HEF.

305. Creditors filed a motion to reopen the bankruptcy case 18 months later on the ground that they allegedly were being treated unfairly in the Bahamian liquidation proceeding. In denying the motion to reopen the case, the court set forth its earlier ruling in which it abstained from hearing the bankruptcy case, in part, because the debtor was a Bahamian entity and its loan documents were governed by Bahamian law. Id. at 725, 726.

17. In the case at bar, unlike in Spanish Cay, HEF is a Delaware limited liability company and its loan documents are governed by New York law. Thus, there was a reasonable expectation that disputes with creditors would be handled in the United States, not in Nevis. See Id. ("creditors dealing with the Debtor knew or should have known that they were dealing with a Bahamian company and that they would be bound by the laws of the Bahamas."). That the judge in Spanish Cay found that the local law of the Bahamas would govern the rights to real estate located in the Bahamas does not change the result. Id. at 725. It is black letter law in the United States that the law of the jurisdiction where real property is located will govern creditors' rights against that property. However, that does not mean that every case involving an entity owning that property must be resolved in that particular jurisdiction or that there cannot be a bankruptcy of the property owner in a different jurisdiction.

18. The argument that the "foreign affairs doctrine" is somehow implicated rings hollow. Wachovia (a U.S. entity) was proceeding with a simple foreclosure of a property owned by HEF (another U.S. entity) in a foreign country under loan documents governed by New York law. There is no pending insolvency proceeding against HEF in Nevis similar to a U.S. bankruptcy case. Consequently, there is no concern that this Court will be usurping the powers of a Nevis court that was in the process of adjudicating creditors' rights. Nor is this Court otherwise interfering with a Nevis court. All this bankruptcy case is doing in staying one U.S.

entity from proceeding against another U.S. entity relating to real property in a foreign land. Thus, concerns of international comity are not implicated. See Rimsat, 956 F.3d at 963.

19. HEF understands the serious issues raised by Wachovia's unilateral decision to suddenly halt all funding of the reconstruction efforts at the Resort. However, it is unclear why the filing of bankruptcy alone should have caused such funding efforts to cease, especially in light of HEF's willingness to support such continued efforts.

20. HEF desires to see the Resort rebuilt, reopened and set on a path for a sustainable, successful future for the benefit of all parties. HEF has formulated and communicated its view about how it believes that best can be accomplished, which HEF believes is in the best interests of HEF and its creditors.

Dated: April 23, 2010

**POLSINELLI SHUGHART PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
(302) 252-0920 (Telephone)
(302) 252-0921 (Facsimile)
cward@polsinelli.com
jedelson@polsinelli.com
skatona@polsinelli.com

- and -

David M. Neff, Esquire
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone:312.324.8400
Facsimile: 312.324.9400

*Counsel to Hotel Equity Fund V, LLC,*
Alleged Debtor

1841463